**Dawn M. WYNKOOP, Trustee for the heirs of the Estate of Ian L. Wynkoop, Respondents,**

v.

**Ida L. CARPENTER, individually and as guardian and natural mother of Laurie J. Carpenter, Appellants.**

**No. C7–96–1497.**

Supreme Court of Minnesota.

Jan. 22, 1998.

ness challenge to subdivision 2(7), or any of his claims with respect to subdivision 3(1) of the statute.

Eric J. Strobel, Thomas E. Peterson, Peterson & Hektner, Ltd., Minneapolis, for appellants.

Michael D. Doshan, Fredric A. Bremseth, Thomas W. Geng, Doshan & Bremseth, Wayzata, for respondents.

## OPINION

ANDERSON, Justice.

Fifteen-year-old Ian Wynkoop was killed when the sport utility vehicle his 16–year–old girlfriend was driving rolled off the road. Ian Wynkoop's mother, respondent Dawn Wynkoop,[1] filed a wrongful death action against appellant Ida Carpenter, the mother of Ian's girlfriend, seeking to recover pecuniary damages for Ian's next of kin. The Hennepin County District Court ruled that Ian's brother, Shane Wynkoop, was not Ian's "next of kin" within the meaning of the wrongful death statute, Minn.Stat. § 573.02 (1996), and thus was not entitled to recover

---

1. Dawn Wynkoop currently goes by the name Dawn Sorenson. To avoid confusion, however, this opinion refers to her as Wynkoop.

pecuniary damages. The jury awarded Ian's parents $150,000 as compensation for Ian's death.

Dawn Wynkoop filed a post-trial motion for a new trial, arguing that the court erred as a matter of law in concluding that Shane was not Ian's next of kin. The court denied the motion. On appeal, the court of appeals concluded that the district court had erred in determining who was Ian's next of kin and held that the court should have included Shane's name on the special verdict form for consideration of pecuniary damage. The court of appeals vacated the district court's decision and remanded the case for a new trial. We affirm the decision of the court of appeals.

On May 9, 1994, at about 4:15 p.m., Laurie Carpenter was driving her Chevrolet Blazer down County Road 15 in Orono, Minnesota. Ian was riding in the passenger seat. Laurie veered off the road and lost control of the car. Ian was thrown from the Blazer and received massive head injuries when it rolled over on top of him. He was declared dead at the scene.

As a prerequisite to filing this wrongful death action, Dawn Wynkoop petitioned the district court under Minn.Stat. § 573.02, subd. 3 to be appointed as trustee for Ian's estate. As Minn. Gen. R. Prac. 144.01 requires, she listed each of Ian's next of kin at the time of his death: herself; his father, Curtis Wynkoop; his brother, Shane Wynkoop; his paternal grandmother, Stella Wynkoop; and his maternal grandparents, Herbert and Elaine Sorenson. The court granted the petition, and Dawn Wynkoop commenced this action in October 1995 against Ida Carpenter as an individual and as Laurie's representative.

Before trial, the parties stipulated that Ian's death was caused by negligence, and the trial proceeded solely on the issue of pecuniary damages sustained by Ian's next of kin. On the first day of trial, May 29, 1996, Ian's parents testified about their relationship with Ian, his role in the family, and his

plans for the future. Shane then took the stand and testified as to his relationship with Ian. In a sidebar conference, Carpenter raised for the first time whether Shane could recover damages as Ian's next of kin. The parties and the court then met in chambers to clarify Shane's status. The court ruled that Shane was not Ian's next of kin. The court explained its reasoning on the record:

> I'm interpreting the next of kin from a very simple and literal position: that the next of kin means "next." And if a child is killed in an accident, the next [of kin] would be naturally the mother and father. And then the next [of kin] after the mother and father would come the siblings; and I don't believe that we have reached the siblings or the brother in this case.

As a result, when the court charged the jury, the sole question on the special verdict form asked the jury what amount would compensate Ian's parents for their pecuniary loss resulting from his death. The form did not include a question about Shane's potential pecuniary loss.[2] On May 31, the jury returned a verdict of $150,000 to compensate Ian's parents for his death.

Following trial, Dawn Wynkoop filed a motion for a new trial, asserting that the district court made an error of law in concluding that Shane was not Ian's next of kin. At the hearing on the motion, counsel for both sides submitted arguments about the meaning of "next of kin" in the wrongful death statute. Wynkoop argued that the court had applied the intestacy statute's definition of next of kin to conclude that Shane was not Ian's next of kin and that established case law had rejected that approach. Carpenter argued that the statute implicitly required the court to make an initial determination on the facts of the case as to which family members were Ian's next of kin. In its order denying the motion, the court retreated from its earlier assertion that "next of kin" literally means "next," an argument seemingly derived from the meaning of "next of kin" in the intestacy statute. Rather, the court held that

2. The record is unclear as to whether the district court ordered the jury to disregard Shane's testimony or simply prevented them from considering his pecuniary loss by excluding his name from the special verdict form. The record is also unclear as to why Ian's grandparents did not seek to recover as next of kin.

[t]he [wrongful death] statute does not identify who is a next of kin but instead, authorizes trial courts to determine who are next of kin from a class of blood relatives. M.S.A. § 573.02. Only after the court determines who is next of kin can the jury be charged with the responsibility of ascertaining pecuniary loss.

Dawn Wynkoop appealed the district court's denial of her motion for a new trial. The court of appeals held that the district court had erroneously applied the law of intestate succession to determine who was Ian's next of kin under the wrongful death statute. *Wynkoop v. Carpenter,* 558 N.W.2d 527, 529 (Minn.App.1997), *pet. for rev. granted* (Minn., Apr. 24, 1997). The court of appeals stated that this court had already decided that an amendment to the wrongful death statute in 1955 deleted references to the law of intestate succession, and thus any blood relative who suffers pecuniary damage may recover. *Id.* at 529. The court of appeals thus held that the district court erred in prohibiting the jury from considering Shane's pecuniary damages, vacated the district court judgment, and remanded for a new trial on damages sustained by Shane as well as by Ian's parents. *Id.* at 530.

On appeal to this court, Carpenter argues that the term "next of kin" in the wrongful death statute does not automatically include all blood relatives, as the court of appeals held. Instead, Carpenter argues that the district court properly interpreted the wrongful death statute to require the court to make the discretionary determination whether a claimant qualifies as next of kin before the jury may consider evidence of the claimant's pecuniary loss.

### I.

We first address whether the term "next of kin" as used in the wrongful death statute has a clear and unambiguous meaning. The interpretation of a statute is a question of law, and thus we review it de novo. *Lolling v. Midwest Patrol,* 545 N.W.2d 372, 375 (Minn.1996). The object of statutory interpretation is to ascertain and effectuate legislative intent. Minn.Stat. § 645.16 (1996). If statutory language is plain and unambiguous, the court must give it its plain meaning. *Phelps v. Commonwealth Land Title Ins. Co.,* 537 N.W.2d 271, 274 (Minn.1995). Only if the statute's meaning is ambiguous—that is, reasonably susceptible of more than one interpretation—should the court look outside the statutory text to ascertain legislative intent. *State v. Gorman,* 546 N.W.2d 5, 8 (Minn.1996). Once this court has construed a statute, that interpretation is as much a part of the statutory text as if it had been written into the statute originally. *See Roos v. City of Mankato,* 199 Minn. 284, 288, 271 N.W. 582, 584 (1937).

The wrongful death statute uses the term "next of kin" in several places, but does not define it or refer to a definition elsewhere in the statute. The statute states that a wrongful death action must be initiated "[u]pon written petition by the surviving spouse or *one of the next of kin,*" and then the district court appoints a trustee to commence or continue the action. Minn.Stat. § 573.02, subd. 3 (emphasis added). The statute also allocates certain responsibilities between the jury and the court: the jury determines the total pecuniary loss "for the exclusive benefit of the surviving spouse and *next of kin,*" and the court then determines the proportionate pecuniary loss of all persons entitled to recover and distributes the jury's award accordingly. *Id.* at subd. 1 (emphasis added). The statute thus contains two slightly different versions of the term "next of kin." "[O]ne of the next of kin" in subdivision 3 contemplates more than one potential next of kin, while "next of kin" unmodified in subdivision 1 contains no such implication.

Historically, the term "next of kin" had a precise and narrow meaning: it referred to the person entitled to the personal property of someone who died intestate. *See* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 400 (2d ed.1995). The term, however, has migrated outside the context of intestacy and is now found throughout Minnesota statutes. We note that the legislature does not use the term "next of kin" in a consistent manner. For instance, the Minnesota Government Data Practices Act requires a court to consider harm to "the surviving spouse, children, or next of kin" before releasing

private or confidential data on a decedent. Minn.Stat. § 13.10, subd. 4 (1996). In contrast, "one or more surviving next of kin" may request an accident report from the commissioner of public safety. Minn.Stat. § 169.09, subd. 13(a)(1) (1996). And a third variation is found in the medical malpractice statute's list of uniform interrogatories, in which the defendant's interrogatories to a plaintiff in a wrongful death action request information about "all heirs and next of kin of decedent." Minn.Stat. § 604.11, subd. .3 (1996) (interrogatory 5). The inconsistent usage of the term indicates that "next of kin" does not have a clear and unambiguous meaning. We conclude that judicial interpretation of the term is thus appropriate and necessary.

## II.

We interpreted the meaning of "next of kin" as used in the wrongful death statute almost 30 years ago in *Martz v. Revier*, 284 Minn. 166, 170 N.W.2d 83 (1969). In *Martz*, the trustee for a child killed in a car accident brought a wrongful death action on behalf of the deceased child's siblings against the child's father. *Id.* at 167, 170 N.W.2d at 84. Because the father was driving the car in which the child was killed and his negligence contributed to his child's death, he was disqualified from recovery. *Id.* The district court contended that the meaning of "next of kin" in the wrongful death statute was identical to its meaning in the intestacy statute. *Id.* at 168, 170 N.W.2d at 84–85. Because the father was the deceased child's sole beneficiary under the law of intestate succession and the siblings were deferred beneficiaries, the court concluded that the siblings could not recover as a matter of law. *Id.* at 169, 170 N.W.2d at 85. We explicitly rejected this argument. *Id.* at 170, 170 N.W.2d at 85–86. Instead, we held that "next of kin" are those blood relatives who are "members of a class from which beneficiaries are chosen under the inheritance statute." *Id.* at 173, 170 N.W.2d at 87.

In reaching this conclusion, we examined the 1955 change in the statutory language governing who may recover in a wrongful death action and how damages are allocated.

Before 1955, recovery in a wrongful death action was to be "for the exclusive benefit of the surviving spouse and next of kin, *to be distributed to them as is personal property of persons dying intestate.*" *Id.* at 170, 170 N.W.2d at 85 (quoting Minn.Stat. § 573.02, subd. 1 (1953)) (emphasis added). The 1955 amendment replaced the language referring to intestacy with the phrase "proportionate to the pecuniary loss severally suffered by the death." *Id.* at 170, 170 N.W.2d at 85–86; *see* Minn.Stat. § 573.02, subd. 1 (1996). We interpreted the change in language to expand the statute's coverage "so that provable claims for pecuniary loss by blood relatives are no longer governed by degrees of kinship." *Martz*, 284 Minn. at 170, 170 N.W.2d at 86. Applying this definition, we concluded that a deceased child's siblings could recover under the wrongful death statute even though they would not have been her beneficiaries under the intestacy statute because her father was still living. *Id.* at 173, 170 N.W.2d at 87.

We subsequently applied *Martz* in construing "next of kin" in another provision of the wrongful death statute. *In re Heirs of Larsen*, 306 Minn. 364, 367–68, 237 N.W.2d 371, 374 (1975) (construing Minn.Stat. § 573.02, subd. 3). In *Larsen*, we concluded that the *Martz* definition of "next of kin" also applies to the provision governing who may petition the court to initiate a wrongful death action. *Id.* at 368, 237 N.W.2d at 374. We reiterated our earlier conclusion that "next of kin" has a more expansive definition in the wrongful death statute than it has in the intestacy statute. *Id.* When a judicial interpretation of a statute has remained undisturbed, it becomes part of the terms of the statute itself. *See Roos*, 199 Minn. at 288, 271 N.W. at 584. We thus consider the definition of "next of kin" that we set forth in *Martz* to be part of the wrongful death statute.

Carpenter points out that this court previously defined "next of kin" as used in the wrongful death statute to mean "nearest blood relation" and cites to this court's decision in *Watson v. St. Paul City Ry. Co. See* 70 Minn. 514, 73 N.W. 400 (1897). In *Watson*, this court considered whether the husband of a decedent was next of kin within the

statute's existing limitation of recovery in a wrongful death action to "the widow and next of kin." *Id.* at 515, 73 N.W. at 400. Utilizing the common law definition of "next of kin" as "nearest blood relation," we held that the husband was not his wife's blood relative and thus could not recover for his wife's death as her next of kin. *Id.* at 517–18, 73 N.W. at 401. *Watson,* however, was decided before the 1955 amendment to the wrongful death statute and thus is no longer controlling. Although *Martz* does not mention *Watson,* *Martz* clearly rejected the limitations of the common law definition of "next of kin." Moreover, we note that Carpenter's contention that "next of kin" is clearly defined undercuts her primary argument on appeal that the wrongful death statute allows the district court to make a discretionary determination based on the facts of the case as to who is a decedent's next of kin.

■ Both the district court and the court of appeals deviated from this court's holding in *Martz.* We find no support for the contention of Carpenter and the district court that either the text of the wrongful death statute or *Martz* permit the district court to make a discretionary determination as to who is a decedent's next of kin. Nowhere does the statute assign this function to the court. Instead, the statute states only that the jury determines the recovery of the surviving spouse and next of kin and that the court then determines the proportionate pecuniary loss of the beneficiaries and then distributes the jury's award accordingly. Minn.Stat. § 573.02, subd. 1. Likewise, *Martz* does not provide any authority for permitting or requiring the court to decide who is a decedent's next of kin.[3] As we pointed out in *Larsen,* "the statute provides no preferences among next of kin." 306 Minn. at 368, 237 N.W.2d at 374. Thus, the court may not pick and choose among eligible members of the class entitled to present evidence of pecuniary damages, although it may decide whether a blood relative comes within the parameters of the class. Further, if a member of the eligible class fails to present sufficient evidence of pecuniary loss, that question can be resolved by a motion for summary judgment or a directed verdict.

■ The court of appeals interpreted *Martz* to permit any blood relative to present evidence to the jury of pecuniary loss. *See Wynkoop,* 558 N.W.2d at 529. We reject this broad construction because it expands the class of persons permitted to recover beyond the parameters laid out in *Martz.* *Martz* limits the class to people who could be beneficiaries under the intestacy statute. *See* 284 Minn. at 173–74, 170 N.W.2d at 87. We reiterate our commitment to the reasoning in *Martz,* which has been good law for almost 30 years. We hold that for the purpose of the wrongful death statute, "next of kin" means blood relatives who are members of the class from which beneficiaries are chosen under the intestacy statute. *See id.* at 173, 170 N.W.2d at 87.

### III.

■ Following the rule established in *Martz,* we look to the intestacy statute in effect at the time Ian Wynkoop was killed to determine the class of beneficiaries who are permitted to present evidence of pecuniary damages under the wrongful death statute. The intestacy statute states that this class encompasses a decedent's issue, parents, and parents' issue. *See* Minn.Stat. § 524.2–103 (1992). The intestacy statute was amended effective January 1, 1996 and expands the class to include grandparents and descendants of grandparents. *See* Act of Apr. 20, 1994, ch. 472, §§ 4, 65, 1994 Minn. Laws 375, 380, 415, *codified at* Minn.Stat. § 524.2–103 (1996).[4] Ian's parents *and* Ian's brother Shane qualify as members of the class from which beneficiaries are chosen under the intestacy statute in effect when Ian was killed. We conclude that the jury should have been allowed to consider the pecuniary loss Shane

---

**3.** Although Carpenter contends that *Martz* requires the district court to determine who has sustained a pecuniary loss, *Martz* explicitly states that whether or not next of kin "have sustained a pecuniary loss * * * is a fact question." 284 Minn. at 173, 170 N.W.2d at 87.

**4.** In practical terms, if a person died before January 1, 1996, her cousin would not be next of kin for the purposes of the wrongful death statute; if she died on or after January 1, 1996, her cousin would be next of kin.

suffered as the result of Ian's death, and that the district court erred as a matter of law in preventing the jury from doing so. We thus affirm the decision of the court of appeals and remand the case for proceedings consistent with this opinion.

Affirmed.